UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CATHLEEN ALLAIRE, ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| v. ) | Civil No. 08-375-P-H |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| *Defendant* ) | |

### REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal contends that the administrative law judge should have found her right ankle condition to be severe, failed to include appropriate limitations arising from her mental impairment in the residual functional capacity he assigned to her, and failed to include necessary limitations caused by her severe hand/wrist problem in the residual functional capacity. I recommend that the court vacate the commissioner's decision and remand the case for further consideration in one limited area.

In accordance with the commissioner's sequential evaluation procedure, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 8, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

the severe impairments of hand, wrist, and back disorders and a mood disorder, none of which, considered separately or in any combination, met or medically equaled the criteria of any of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, Record at 16, 20; that the plaintiff had the residual functional capacity to lift and carry up to 20 pounds or up to 10 pounds on a frequent basis, to use the upper extremities frequently, to work independently in small groups, and to interact occasionally with the general public, Finding 5, *id*. at 22; that she was unable to perform any past relevant work, Finding 6, *id*. at 24; that, given her age (41 on the alleged date of onset, a younger individual), high school education, work experience, and residual functional capacity, and using certain sections of Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") at a framework for decision-making, there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 7-10, *id*. at 24-25; and that the plaintiff therefore had not been under a disability, as that term is defined in the Social Security Act, at any time from the alleged date of onset through the date of the decision, Finding 11, *id*. at 25.  The Appeals Council declined to review the decision, *id*. at 7-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review herein is whether the commissioner's determination is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Right Ankle Condition

The plaintiff contends that the administrative law judge was required to find that her right ankle condition was severe. Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 13) at 7. Severity is determined at Step 2 of the sequential evaluation process. The claimant bears the burden of proof at Step 2, although it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

The administrative law judge addressed the plaintiff's claim concerning her right ankle as follows:

> The medical evidence of record . . . does not support the claimant's allegations of severe difficulties with her lower extremities. The first

3

complaint of record after 2002 concerning foot pain was reported on October 28, 2004 after the claimant had driven a long distance the prior week. The claimant had reported on June 19, 2003 that she was active and on her feet during the day. On October 28, 2004 tightness and tenderness were found in the right foot but no other abnormality. X-rays revealed no abnormalities. Tendonitis was diagnosed. Orthotics were prescribed (Exhibits 14F and 15F). A CT scan in January 2005 revealed degenerative sclerosis of the anterolateral calcaneus. An MRI that month also indicated tenosynovitis and cysts of the calcaneus and distal tibia (Exhibit 24F). On January 11, 2005 her stance was found to be severely pronated. Her treating physician stated that she could not do significant sitting or standing without appropriate orthotics, implying that [] orthotics would relieve her symptoms. He expected that she would have periodic flare ups. By January 20, 2005 the claimant experienced a great deal of pain relief with use of [an] ... air splint support. Remaining pain was tolerable. Later notes through August 11, 2005 reveal that she continued to do well when she was compliant with prescribed treatment (Exhibit 21F). Treatment notes in 2005 reveal that she had flare ups when she was not compliant with prescribed treatment. On August 19, 2005 it was noted that she was inconsistent with the use of her orthotics and walking boot despite being more comfortable with them on (Exhibit[] 25F). These reports support a finding that the claimant had some lower extremity limitations for a short period from October 2004 until January 20, 2005 without the use of orthotics but that she had no significant limitations from January 20, 2005 until October 2005 when she used prescribed orthotics.

A functional capacity evaluation on February 23, 2005 indicated that the claimant was able to stand or walk from 2.5-5 hours in an eight hour workday (Exhibit 19F). However, this finding is not by a medical expert and is inconsistent with treatment notes that reveal no significant problems when the claimant was compliant with treatment and used prescribed orthotics. Therefore the undersigned gives little weight to the evaluation in this regard.

The claimant underwent multiple surgical procedures on the right foot and ankle on October 4, 2005 (Exhibit 23F). It was expected that she would need six to 12 weeks recovery before she would be fully weight bearing (Exhibit 25F). X-rays in January 2006 revealed osteopenia[2] in the right foot (Exhibit 24F). On March 17, 2006 she underwent surgical removal of painful hardware emplaced in October 2005 (Exhibit 23F). These reports support a finding that the claimant had some lower extremity difficulties from October 2005 until soon after March 17, 2005 but not that she had any significant difficulties with the lower extremities thereafter.

---

[2] Decreased calcification or density of bone. *Stedman's Medical Dictionary* (27th ed. 2000) at 1284.

4

> The claimant's activities, the absence of complaints of lower extremity complaints [sic]; the absence of strong objective medical evidence for most of the period after the alleged onset date, and the signs of noncompliance all support a finding that the claimant was not experiencing symptoms and limitations as severe as she alleged to the Social Security Administration except for a short period from October 2005 through March 2006 when she had surgery. Medical experts at Maine Disability Determination Services found that the claimant did not have severe lower extremity disorders ([E]xhibits 12F and 17F). New medical evidence, except for the short period surrounding her surgeries, not available to those experts is cumulative and reflects the presence of essentially the same facts as were documented in reports available to them. Therefore it is found that the claimant did not and does not have a severe impairment in the lower extremities that ha[s] or will cause more than slight limitation in her ability to perform basic works tasks for 12 months or longer.

Record at 18-19.

The plaintiff first argues that the administrative law judge "impermissibly ignored" the "important objective evidence" provided by the functional capacity evaluation done in February, 2005. Itemized Statement at 7. But that evaluation is signed by a physical therapist. Record at 472. The burden is on the claimant at Step 2 to provide medical evidence of the existence and severity of an impairment. *See* 20 C.F.R. §§ 404.1508, 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); Social Security Ruling 85-28, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 393 (only medical evidence is considered at Step 2). Evidence of the existence of an impairment must come from an acceptable medical source. 20 C.F.R. §§ 404.1513(a), 416.913(a). A physical therapist is not an acceptable medical source, *id*., although a physical therapist *may* provide evidence of the severity of an impairment. 20 C.F.R. §§ 404.1513(d), 416.913(d) (emphasis added).

5

Thus, if the administrative law judge's conclusion that the plaintiff's right ankle condition was not severe is medically supportable, he did not "impermissibly ignore" the physical therapist's report. The administrative law judge did note that the report was "not by a medical expert and . . . inconsistent with treatment notes[.]" Record at 18. The administrative law judge is not required to consider the report of a person other than an acceptable medical source on the question of the severity of an impairment. *Lewis v. Barnhart*, 2006 WL 3519314 (D. Me. Dec. 6, 2006), at *6. Accordingly, the administrative law judge's dismissal of the physical therapist's conclusions cannot constitute an error requiring remand.

The plaintiff next argues that "[t]he ALJ's reliance on state disability agency medical reviews was misplaced[,]" because the only such reviewer on which the administrative law judge could have relied[3] "was not aware of the treatment by Drs. Steinmetz and Grosvenor nor of the October, 2005, surgery, or the March, 2006, procedure to remove hardware[.]" Itemized Statement at 8-9. This challenge would carry more weight if the administrative law judge himself had not acknowledged in his opinion that the record contained new medical evidence, not available to the state-agency experts. Record at 18-19. He went on to give his reasons for nonetheless finding support in those reports. *Id*. at 19. The plaintiff says nothing about this portion of the opinion, and thus takes nothing by this argument.

The next Step 2 challenge offered by the plaintiff is an assertion that the administrative law judge fatally failed to apply Social Security Ruling 82-59, which, she asserts, "provides a number of safeguards prior to [a claimant's noncompliance with prescribed treatment] being

---

[3] The administrative law judge refers to Exhibits 12 F and 17F. Record at 18. The plaintiff correctly points out, Itemized Statement at 9 & n.5, that one of these two Physical Residual Functional Capacity forms was signed by a person who was not a physician, but rather a "S[ingle] D[ecision] M[aker]," Record at 352, whose opinion may not be used as information from an acceptable medical source. *See Eshelman v. Astrue*, 2007 WL 2021909(D. Me. Jul. 11, 2007), at *3.

6

used to disqualify a claimant from receiving benefits." Itemized Statement at 9.[4] That Ruling applies only when a failure without justifiable cause to follow prescribed treatment is the sole factor disqualifying an individual "who would otherwise be found to be under a disability." Social Security Ruling 82-59, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 793. That is not the case here, where the question is only whether a particular impairment should have been found to be severe at Step 2, and the administrative law judge gave several other reasons for denying the plaintiff's application. Under these circumstances, if SSR 82-59 is applicable at all, the failure of the administrative law judge to follow its dictates could only have been harmless error.

Finally, the plaintiff asserts that "the ALJ erroneously stated that there was no objective evidence." Itemized Statement at 10. I see no such statement in the opinion with regard to the plaintiff's alleged right ankle problem. The plaintiff also complains that the administrative law judge "made note of" the physical therapist's functional capacity evaluation "in asserting that she could perform light work but completely rejected that portion of the evaluation regarding her limitation to standing and walking only two to five hours per day." *Id*. The administrative law judge did refer to the evaluation with respect to the claimant's impairments other than the right ankle problem when determining the plaintiff's physical residual functional capacity, Record at 24, a use which is unobjectionable under governing Social Security law so long as the existence of any severe physical impairment on which that determination is based has been established by other, medically acceptable evidence. 20 C.F.R. §§ 404.1512(c), 404.1513(a), 416.912(c), 416.913(a). That use does not render fatally flawed the administrative law judge's rejection of

---

[4] It perhaps bears repeating here that the plaintiff's application for benefits was denied at Step 5 of the sequential evaluation process, not Step 2.

that evaluation with respect to the separate question of whether the plaintiff suffered from a severe impairment of her right ankle.

The plaintiff correctly states that the administrative law judge was required to consider at Steps 4 and 5 the impact of any impairment to her right ankle, even if he found it not to be severe. Itemized Statement at 10 n.7. It is not clear that the administrative law judge did so in this case, although he found that her "allegations of severe difficulty standing and walking are not supported by the activities that she is able to perform," Record at 17, which suggests a rejection of the limitations found by the physical therapist as a result of the alleged right ankle problem. In any event, any error by the administrative law judge in this regard was harmless, because he expressly rejected any physical limitations caused by such a problem that could have had a sufficient impact to invalidate the assigned residual functional capacity for light work.

### B. Hand/Wrist Problem

The plaintiff next argues that the administrative law judge failed properly to analyze the limitations caused by her problems with her right wrist and hand, which he found to be severe. Itemized Statement at 12. She asserts, without citation to authority, that the diagnosis of tendinitis[5] or tenosynovitis[6] "is usually made on the basis of examination and symptoms, especially pain and swelling such as that noted by FNP Marshall in 2003," and that the administrative law judge's references to x-rays and the absence of abnormalities is inconsistent with this standard. *Id*. at 14. As lay persons, neither the plaintiff nor the court is qualified to draw this conclusion. This is not the kind of "common-sense judgment[]" about functional capacity based on medical findings that the First Circuit found acceptable in *Gordils*. 921 F.2d at 329.

---

[5] Inflammation of a tendon (also spelled "tendonitis"). *Stedman's Medical Dictionary* at 1794. Record at 614.
[6] Inflammation of a tendon and its enveloping sheath. *Stedman's Medical Dictionary* at 1795. Record at 582.

The administrative law judge does not mention the plaintiff's hand and wrist problems in the narrative accompanying his finding that the plaintiff suffered from severe "hand [and] wrist . . . disorders." Record at 16-20. His subsequent mentions of this impairment are as follows:

> The claimant's upper extremity disorders are covered under section 1.02 [of the Listings]. The criteria under that listing are not met because the claimant has not suffered the loss of effective fine and gross movements.
> * * *
> A medical report dated June 18, 2002 indicates that the claimant complained of right wrist pain that had been present for many years. Examination revealed no abnormalities (Exhibit 9F). She reported pain again on April 18, 2003. Examination revealed no abnormalities other than "scant" swelling along the wrist and proximal forearm. X-rays revealed no abnormalities other than mild periarticular osteoporosis and ulnar minus variant. Right wrist tendonitis was mentioned on February 9, 2004 (Exhibit[] 15F). X-rays on December 17, 2004 revealed only stable ulna minus variant (Exhibit 24F). On December 21, 2004 she was assessed as having right wrist de Quervain's tenosynovitis and given cortisone injection therapy. On January 19, 2005 she reported pain relief but not full resolution. No objective signs of disorder were found although there was mild tenderness (Exhibit 25F). She reported being pain free on January 21, 2005. Examination revealed no abnormality. Her treating physician encouraged her not to file for Supplemental Security Income (Exhibit 24F). The claimant reported increasing right wrist pain on February 16, 2005. However, examination was negative except for some mild tenderness (Exhibit 25F). The record contains no later medical reports of wrist problems.
> * * *
> A functional capacity evaluation dated February 25, 2005 . . . noted [that she was] able to use her upper extremities.
> * * *
> As for the opinion evidence, no treating or examining physician has indicated that the claimant has greater limitations due to a physical disorder than those found in this decision [which are, with respect to the hand and wrist, ability to "use the upper extremities frequently"].

Record at 22, 23, 24.

Contrary to the plaintiff's contention, nothing in this discussion necessarily leads to a conclusion that the administrative law judge "attach[ed] any significance to either x-rays or an absence of abnormalities." Itemized Statement at 14. The mentions of x-rays and abnormalities

9

could just as easily be a mere recitation of the evidence in the record concerning the right hand and wrist.

It is true, as the plaintiff asserts, *id.*, that the administrative law judge appears to have missed the mention of her right wrist tendinitis in a treatment note dated April 27, 2005. Record at 535. That note records the following: "She also has a history of right wrist tendinitis secondary to a work injury, but apparently the occupational therapy she had worsened her pain, and at this time there is nothing more that Dr. Grosvenor can do." *Id.* On February 16, 2005, Dr. Grosvenor noted "considerable improvement after the steroid injection on the radial aspect of the wrist" and that "[i]t will be interesting to see what her functional capacity [test] results are." *Id.* at 574. The functional capacity test results, dated February 25, 2005, limit handling to "frequent" in all recorded categories. *Id.* at 474. This is the limitation that the administrative law judge imposed. *Id.* at 22. Nothing in the April 27, 2005, nurse practitioner's note is inconsistent with this limitation. The administrative law judge's statement that there were "no later medical reports of wrist problems" could even be technically correct, as the April 27 note merely refers to the plaintiff's history, rather than any current report of problems. In any event, any error in this regard is harmless.

Finally, the plaintiff faults the administrative law judge for "attempting to assess the degree of impairment [in her hand and wrist] without expert medical assistance," Itemized Statement at 15, but, as previously noted, the law does not require an administrative law judge to consult a medical expert in this instance. In addition, this is a question only of the extent of limitations caused by a medically-determinable impairment, which is not limited to evidence from medically acceptable sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). Thus, the administrative law judge was entitled to rely on the functional capacity evaluation for this

10

purpose, and that report is fully consonant with the limitations he adopted. There is no error in this regard.

### C. Mental Impairment

The plaintiff contends that the administrative law judge "failed to fairly evaluate the evidence regarding severity" of her mood disorder. Itemized Statement at 10-11. Specifically, she asserts that the administrative law judge wrongly "ignore[d]" the views of her treating social worker, Ms. LaRose. *Id*. at 11-12. She does not identify, however, what entries from the LaRose record should have been adopted, nor does she discuss how proper evaluation of the severity of her mood disorder, based on those entries, would have changed the outcome of this case. Such an abbreviated presentation of an argument does not allow its substantive review by the court.[7] *Hopkins v. Astrue*, 2007 WL 3023493 (D. Me. Oct. 12, 2007), at *5 n.3.

The plaintiff's next argument is that the administrative law judge erred when he "quoted parts but ignored other parts of the extensive report by Dr. Philip Morse," Itemized Statement at 11, a treating psychologist. She cites no authority for this assertion, and I am aware of none that supports this general proposition. She apparently intends to assert that the administrative law judge could not "ignore" Dr. Morse's "conclusions that she suffered from anxiety as well as the mood disorder[,]" *id*., but does not suggest why this is so. In addition, Dr. Morse did not diagnose an anxiety disorder. Record at 464-65.[8]

---

[7] To the extent that the plaintiff means to refer to the administrative law judge's discussion of Ms. LaRose's report at page 21 of the record, his treatment of that report is not grounds for remand. A licensed social worker is not an acceptable medical source. 20 C.F.R. §§ 404.1513(a), 416.913(a). The administrative law judge sets forth his reasons for not giving "great weight" to Ms. LaRose's assessment of severe functional limitations. That is all that is required. To suggest that an administrative law judge must give the same deference to the conclusions of one social worker that he or she gives to those of another social worker, Itemized Statement at 11, is to misstate Social Security law.
[8] To the contrary, he noted the plaintiff's "mood disorders reflecting anxiety." Record at 464. In other words, the plaintiff's anxiety was a symptom or effect of her mood disorders, not a separate impairment.

11

The plaintiff also contends that it was a "more serious error" for the administrative law judge to fail to call a medical expert to testify at the hearing. Itemized Statement at 12. As this court has said many times, whether to consult a medical expert at the hearing is a matter of the commissioner's discretion, and the failure to do so will not provide a basis for remand. *E.g., Field v. Barnhart*, 2006 WL 549305 (D. Me. Mar. 6, 2006), at *3; *Fontaine v. Barnhart*, 2005 WL 1353381 (D. Me. June 7, 2005), at *5. The plaintiff also asserts, in conclusory fashion, that the administrative law judge based his rejection of Ms. LaRose's conclusions "solely on his own lay assessment of the evidence, rather than on any medical opinion[,]" apparently because that report was added to the record after the state-agency psychological consultants had reviewed the claim. Itemized Statement at 12. While it is true that an administrative law judge may not draw conclusions based on raw medical evidence, *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990), in this case his stated reasons for giving Ms. LaRose's conclusions little weight, Record at 21, do not require that he apply specialized psychological knowledge. There was no error in this regard.

Finally, the plaintiff concedes that the administrative law judge found that she had moderate limitations in concentration, persistence, or pace, Record at 22, but faults him for failing to include any corresponding limitations in the hypothetical question he posed to the vocational expert at the hearing. Itemized Statement at 11-12. The administrative law judge did pose a second hypothetical question to the vocational expert, based on more severe limitations in these areas than he found in his written opinion. Record at 784. I agree that the absence of a question to the vocational expert including the moderate difficulties in maintaining concentration, persistence, or pace, which the administrative law judge found to exist, as opposed to the severe limitations espoused by the plaintiff's attorney at the hearing, constitutes

error.[9] I cannot conclude that the error was harmless, because the effect of such limitations on particular jobs is precisely the area of the vocational expert's expertise, and the reason for his or her testimony. This error requires remand. *See, e.g., Trebilcock v. Barnhart*, 2004 WL 2378856 (D. Me. Oct. 25, 2004), at *3-*4; *Biron v. Apfel*, 2000 WL 1771121 (D. Me. Dec. 4, 2000), at *3.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this opinion and limited to the deficient examination of the vocational expert as set forth in Section C, *supra*.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

---

[9] At oral argument, counsel for the commissioner asserted that the moderate limitations in concentration, persistence, or pace found by the administrative law judge "is a Step 2 issue," apparently meaning to suggest that the absence of this limitation from the hypothetical question to the vocational expert is irrelevant, as that question concerns Steps 4 and 5 of the sequential review process. However, an administrative law judge is directed to consider the limitations caused by any existing impairment, whether or not determined at Step 2 to be severe, at Steps 4 and 5. 20 C.F.R. §§ 404.1545(e), 416.945(e). Counsel for the commissioner also suggested that the administrative law judge's inclusion in his hypothetical question of the limitation "that this individual would require work that could be performed without the interaction of a lot of people. So, maybe one or two team members, or independently, but certainly not in the presence of large numbers of people, and certainly not involving much in the way of interaction with others[,]" Record at 782-83, was his "common sense interpretation of her attentional difficulties in the workplace." Linking the limitation on concentration, persistence, or pace with a limitation on interaction with others, particularly when one of the four standard areas of functional limitation considered in Social Security mental impairment practice is difficulties in maintaining social functioning, and another of the four is difficulties in maintaining concentration, persistence, or pace, *e.g., id*. at 441, impermissibly conflates two distinct limitations.

Dated this 13th day of October, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge